**DIETERLE, Plaintiff-Appellant v. BOURNE et, Defendants-Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 1752. Decided July 21, 1943.

552

Gus W. Byttner, Dayton, for plaintiff-appellant.
Delscamp & Smith, Dayton, for defendants-appellees.

**OPINION**

By BARNES, P. J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The plaintiff, John G. Dieterle, on June 3, 1940, filed a petition in the Common Pleas Court of Montgomery County, Ohio, against George E. Bourne and wife, Nelle O. Bourne, on

a promissory note, to which were attached certain conditions, seeking to recover the sum of $300.00 and interest, being the face value of the note.

On July 1, 1940, through the application of the defendants, Walter E. Dieterle, the son of the plaintiff, was made a party defendant. On the same date the defendants Bourne filed an answer and cross-petition. The answer admitted the execution and delivery of the note set forth in the petition, and as a defense averred that the note was obtained by fraud, as set forth in the cross-petition, and denied that there is due and owing to plaintiff the amount claimed. The answer denies each and every allegation in the petition contained.

By way of cross-petition, the defendants Bourne averred that prior to the 16th day of February, 1940, the co-defendant, Walter E. Dieterle, was the owner and had the legal title to certain described real estate located in the City of Oakwood, Montgomery County, Ohio; that the plaintiff, John G. Dieterle, is the father of Walter E. Dieterle and was acting as Walter E. Dieterle's agent in the sale of said premises to the defendants Bourne; that the note sued upon in the petition was part of the consideration for the purchase price of said real estate. Defendants further aver that on or about January 20, 1940, John G. Dieterle was acting as the agent for Walter E. Dieterle, and falsely pretended, with intent to defraud, to George E. Bourne and Nelle O. Bourne, prospective purchasers of the real estate, that said premises were in first-class condition, with the exception of leakage of water in the west and south walls of the kitchen; that said leakage in said west and south walls would be repaired to the satisfaction of the purchasers, by which said false pretenses John G. Dieterle and Walter E. Dieterle, did, on the 16th day of February, 1940, obtain from the said Bournes $6700.00 in cash and a promissory note for $300.00, set forth in plaintiff's petition, with intent then and there to cheat and defraud the said Bournes. It is further averred that in truth and in fact said premises were not in first class condition with the exception of the leakage at the west and south walls in the kitchen, but contained the following defects:

"A large open crack in the foundation at the east rear cellar window wall, permitting the elements to get under the basement.

The basement drain was so constructed as to permit water to flow onto the cement basement floor.

There was a leak in the fruit cupboard in the basement.

The door to the coal bin warped and hard to open.

Location of the letter box permits water to come into the inside of the house.

The front door of the house sticks and is hard to open.

On three living room walls water spots showed where rain seeps in.

The outside walls of the dining room also show where the water comes in.

There are cracks in the plaster in the dining room.

There is a leak over the work bench in the kitchen.

A leak in a rear entrance.

A leak in the breakfast room, showing where water had marred the finish of the walls.

The lock on the kitchen door to the basement is such that it can not be closed, and the swinging door from the kitchen to the dining room is split and loose from its moorings.

A large crack around the bath tub permitted water to leak to the first floor, and plaster cracks in the northwest room; closet door will not close.

Bath room door, northwest hall door, northeast hall door all warped; northeast room upstairs leaks and the closet door in the northeast room rubs.

Bulge in shingles on the north dormer roof; crack in front walk at step entrance, concrete steps in the rear breaking away from the house; cement driveway breaking up, showing poor material and poor workmanship in construction."

It is further averred in the cross-petition that John G. Dieterle at the time he so falsely pretended, well knew said pretenses to be false and that said pretenses were false and induced the said Bournes to part with their money and said note aforesaid.

The prayer of the cross-petition asks for compensatory and punitive damages in the sum of $1500.00.

The plaintiff, John G. Dieterle, and new defendant, Walter E. Dieterle filed separate replies, denying all the averments of defendants' cross-petition.

The following facts are essential to an understanding of the controversy:

First, it might be said that the note sued upon contained the following provision:

"Providing that the repair of physical defects mainly the leakage of water into the west and south walls of kitchen are made to satisfaction of purchasers. Also that settlement is

properly made of the proration of water, gas, electricity, insurance and rent as of day and date of deed."

The note also contained a recital that the amount thereof was the balance of the purchase price of $7000.00 for property located at 426 East Drive, Oakwood, Ohio.

Sometime in early January, 1940, the plaintiff, John G. Dieterle, contacted by 'phone one Gregory Anderson, a real estate broker operating in Montgomery County, looking to the placing of the real estate referred to in his hands for sale. Within a very short time the broker, Anderson, went to see plaintiff Dieterle, and according to Anderson, procured a written listing for the sale of said premises. Anderson was not able to produce the signed listing, but he testified that the same was on one of their regular blanks and that the blank spaces were filled in by him, through which Dieterle fixed a price of $7000.00 and agreed to pay a commission to Anderson of $300.00. This blank form was introduced in evidence as an exhibit and appears in the bill of exceptions.

Within a few days Mr. Anderson called Mrs. Bourne over the 'phone, in response to her previous request that Anderson locate a home for them as they were in the market to purchase. At that time Mr. Bourne was out of the city, but on his return home near the end of the week, Anderson was contacted and arrangements made for them to inspect the property. The Bournes were taken to the premises on the Saturday afternoon following. They made a very complete inspection of the residence, going into every room in the house, both up and down stairs; then into the basement, thereafter on the outside and to the garage. The premises were occupied by tenants by the name of Campbell. Mrs. Campbell showed them through the house in conformity to prior arrangements that had been made by Anderson. Mrs. Campbell pointed out certain defects, the major ones being the two items referred to in the note. Mr. Anderson says that in the hearing of himself and the Bournes she made other complaints but they were not considered serious. After completing the inspection, Mr. Anderson took the Bournes back home, and before separating they said they wanted to make a further inspection, which they did on the Saturday following, going back alone. The Bournes testified that they went into the front room and there again talked to Mrs. Campbell. Thereafter the Bournes contacted Mr. Anderson and agreed to purchase the premises at the price named, conditioned that the main defects be corrected by Mr. Dieterle. Mr. Anderson then procured from the Bournes, on one of his printed forms, a propo-

sal to purchase at the price of $7000.00. There is inserted in this sales proposal the condition that the named physical defects were to be repaired to the satisfaction of the purchasers.

Two days later Mr. Anderson took the sales proposal to Mr. John G. Dieterle and he executed the printed form of acceptance, signing the same Walter E. Dieterle, by John G. Dieterle.

Walter E. Dieterle's connection with the property is explained as follows:

The father, John G. Dieterle, was a contractor and held title in his own name to the vacant lot in question. He had built for sale a number of properties in Oakwood. In order to build on this particular lot, it was necessary for him to finance the costs of the building. Mr. Anderson, who represented some loan company, was contacted, but Mr. John G. Dieterle could not procure a loan from Mr. Anderson's company on this property for the reason that he already had a loan on his own residence and the company would not make a building loan to him on this lot. Mr. Anderson suggested that a deed be made to the son, Walter, and that the latter then make the application for the loan. This was done, after which John G. Dieterle built the residence about the year 1938. All the money procured from the loan company went to the payment of labor and material. Afterwards it was refinanced, the first loan paid off and the balance used for the additional costs of building. From this it would appear that Walter E. Dieterle had no actual ownership in the property, although the legal title was in his name. As between the father and son, Walter merely lent his name in order to carry out Mr. Anderson's plan through which money could be procured to erect the building.

Other factual questions will be stated from time to time as we pass on the several claimed errors.

The case was tried to a jury and resulted in a verdict for the defendants, both on plaintiff's petition and defendants' cross-petition. The amount of the verdict was $1000.00. Motion for new trial was duly filed, overruled and judgment entered on the verdict. Within statutory time plaintiff gave notice of appeal, thus lodging the case in our Court.

At the close of defendants' testimony plaintiff dictated into the record a motion that the defendant Walter E. Dieterle be discharged from the action, and also a like motion that defendants' cross-petition be dismissed against the plaintiff, John G. Dieterle. Both motions were overruled. The plaintiff then presented himself as a witness in rebuttal. Both sides

presented to the court, in writing special requests, which were given.

Following the arguments by counsel, the trial court stated that he would direct a verdict in favor of the defendant Walter E. Dieterle. After this pronouncement counsel for the cross-petitioners asked the court to dismiss the defendant Walter E. Dieterle as a party defendant without prejudice to a new action. This request was granted over the objections of plaintiff. The court then presented his general charge to the jury. The jury were instructed not to consider the cause of action against Walter E. Dieterle, since he was dismissed and was no longer a party defendant.

Following the notice of appeal and the filing of briefs, counsel for appellees presented a motion to our court that the appeal be dismissed for the reason that plaintiff-appellant had failed to file his assignments of error within the time prescribed under the statute. This motion was called to our attention on the day that the case was assigned for oral argument. We followed our established practice and overruled the motion, provided appellant's brief adequately disclosed the errors complained of. Counsel for appellees urge that appellant's brief did not qualify, even under this practice.

We find that appellant's brief does set out the claimed errors, and while we criticize appellant's failure to comply with this provision of the law, yet we again overrule appellees' motion to dismiss.

We shall not attempt to follow the claimed errors in the same order raised and discussed in the brief, which we probably would do if assignments of error were filed.

One of the first questions discussed by appellant is the claimed erroneous action of the trial court in permitting counsel for cross-petitioners to dismiss their action against Walter E. Dieterle without prejudice. In this connection counsel cite us to §11586 GC, and the decision of the Supreme Court entitled **Laube Baking Company v Middleton, 118 Oh St 106.** We are inclined to think that the decision of the Supreme Court in the above entitled case supports appellees' contention that the trial court was in error in permitting the cross-petitioners to dismiss Walter E. Dieterle as a party defendant without prejudice. However, we agree with counsel for the cross-petitioners that this action was not prejudicial as against the plaintiff, John G. Dieterle. This is true because Walter E. Dieterle does not file an appeal and he alone would be interested in the matter of his dismissal without prejudice.

558

This action of the court in no way affects the judgment against the plaintiff, John G. Dieterle.

The second question raised is that the plaintiff is entitled to a judgment notwithstanding the verdict, for the reason that the cross-petitioners failed to allege that the claimed misrepresentations were relied upon by them, and, further, that no evidence was presented by the cross-petitioners that they relied on the claimed misrepresentations.

The law is well defined in Ohio, as well as in other jurisdictions, that in order to maintain an action for damages for deceit, certain elements must be presented as follows:

1. There must be actual or implied misrepresentation or concealment of a matter of fact which related to the present or past and which is material to the transaction.

2. The representation must be false.

3. The representation must be made with knowledge of its falsity or with such utter disregard and recklessness as to whether or not it is true or false that knowledge may be inferred.

4. It must be made with the intent of misleading another into relying upon it.

5. This other person must have relied upon it with the right to so rely.

6. Injury must have resulted as a consequence of such reliance.

All of the above ingredients must be present and the absence of any one of them is fatal to recovery. Ohio Jurisprudence, Volume 19, (Fraud and Deceit) Section 24.

We have no difficulty in determining that the cross-petition was defective in that it did not allege one of the essential elements in an action for fraud and deceit, to-wit, "that cross-petitioners relied upon the claimed misrepresentations with a right to so rely."

The following allegation in the cross-petition "induced the said George E. Bourne and Nelle O. Bourne to part with their money and said note aforesaid," is not sufficient. However, the cross-petitioners in isolated instances did testify that they relied upon the claimed misrepresentations. Under the authorities this seems to cure the defect, even though the cross-petition in its language failed to state a cause of action. We base this conclusion on the following authority:

Section 11311 GC provides in substance, among other things, that where objection to the pleading is not made by demurrer or answer, the infirmity shall be deemed to have been waived, except only where it is claimed that the court has no

jurisdiction of the subject of the action and that the petition does not state facts which show a cause of action. This section standing alone under the exception might be said to be applicable to the cross-petition in the instant case.

This question is elaborately discussed in **Ohio Jurisprudence, Volume 31 (Pleadings), p. 984, §§361 to 369,** inclusive.

**Section 368,** under the heading "Supplying Defects and Omissions by Evidence," states that a defect in a pleading caused by the omission or defective statement of a material allegation may be cured where evidence is admitted at the trial, without objection, to prove such allegation. A number of Ohio cases are referred to in the notes. We do not quote further from the section, nor do we cite and comment on the cases, but merely state that under the decisions of the Ohio courts, we are constrained to the view that the presentation of evidence on the essential element omitted from the cross-petition cures the defect.

The third question raised is that the plaintiff is entitled to a verdict and judgment on his petition, being an action on a note. This question is raised through the record in various methods. We have no difficulty in determining this question against the appellant, for the reason that the answer, after admitting certain portions of the allegations in the petition, denied all others, and included in the denial would be the plaintiff's allegation of compliance with all conditions. We observe that the note contained a condition that certain defects in the house were to be taken care of by the plaintiff to the satisfaction of the defendants.

The record discloses that the parties were in disagreement as to whether or not these defects were corrected by plaintiff. Plaintiff testifies that he did go to the premises and made repairs leaving word with the tenant that if anything further appeared that he should be notified, and, receiving no notice, he assumed that everything was all right. Defendants testified that the corrections were not made and that the defects still existed and were present even at the time of the trial. This being a controverted question of fact, the jury were warranted, if they saw fit, to find in favor of the defendants.

The provision of the note providing for repairs to the satisfaction of the defendants, would not warrant their acting arbitrarily, but in the light of their testimony that the repairs had not been made at all, or, at least, that the conditions complained of did still exist, the jury would have a right to determine this disputed factual question in favor of the defendants, which they evidently did. It therefore follows that plaintiff,

not having complied with a material condition of the note, could not recover. On this branch of the case, we find against the plaintiff-appellant.

The questions raised under the cross-petition are more difficult. In the first place, there is serious doubt as to whether or not the cross-petition states a cause of action against the plaintiff, John G. Dieterle. Plaintiff preserved his record throughout, although possibly not on the ground that is now bothering this Court.

It will be observed that the cross-petition, after alleging that Walter E. Dieterle was the owner and had the legal title to the real estate in question, further averred that the plaintiff, John G. Dieterle, on or about the 20th day of January, 1940, while acting as agent for Walter E. Dieterle, did falsely pretend with intent to defraud that said premises were in first class condition, with the exception of leakage of water into the west and south walls of the kitchen. After reciting the defects, which it is claimed disclosed that the property was not in first class condition, then appears the allegation in substance that John G. Dieterle at the time he so falsely pretended well knew said pretenses to be false, etc.

The prayer of the petition asks for compensatory and punitive damages, without stating against whom. Not even the usual words designating the defendant were used. The query arises as to whether or not this is not in fact an action against Walter E. Dieterle and not John G. Dieterle. We pass this observation without further comment.

On another proposition we call attention to the cross-petition wherein it alleges in substance that the claimed misrepresentations were made on January 20, 1940. This date is important in that it fixes definitely the time when the cross-petitioners claim the misrepresentations were made.

This necessitates further examination of the bill of exceptions as to pertinent factual questions.

On January 20, 1940, the defendant cross-petitioners did not know, had not talked to and never had seen John G. Dieterle. It was not until February 16, 1940, that the plaintiff and the cross-petitioners first met or had any conversation or communication with each other.

January 20, 1940, was the day that the real estate broker, Mr. Gregory Anderson, obtained from the cross-petitioners the signed proposal for purchase. This proposal provided that certian named defects were to be repaired. The cross-petitoners at that time had no contact with any person relative to the purchase of the premises except Gregory Anderson, the broker.

Mr. and Mrs. Bourne both testified that it was during their first meeting with Mr. Gregory Anderson, possibly January 13, that he told them that the house was in first class condition.

Mr. Anderson in his testimony stated that he represented both the seller and the purchaser. It was disclosed that the purchaser paid to him $100.00 at the time of the signing of their proposal. This amount was not entered in the proposal, although there is a blank space for such. Whether or not this was a compensation to Anderson from the purchasers was not disclosed in the record. Anderson was called as a witness for the cross-petitioners and apparently was friendly to their side of the controversy. However, he testified that what he said to the Bournes was that the property was in first class condition so far as he knew. This would not mean anything. He further stated that he did not know anything about the condition of the house until he went to see it the first time with the Bournes.

On the factual question, we assume that the jury would have a right to believe either Mr. and Mrs. Bourne or the broker, Gregory Anderson as to what was said.

However, the legal question remains as to what authority Gregory Anderson had to make any representations as to the condition of the property wherein a possible liability would be incurred against the owner. The law is well recognized that an agent must act within the scope of his authority, and further, that a person dealing with an agent is bound to know the authority of such agent. Mr. Anderson's authority to act as broker in the sale of the premises, was the writing which he termed a listing. This writing could not be found, but Mr. Anderson presented a blank which he said was the form used and same was admitted in evidence. This form did contain the provision that the principal guaranteed the title to be good and merchantable, release of dower and will convey by deed of general warranty. Nothing whatever is stated in the listing form as to the condition of the property; nor did Mr. Anderson testify that the plaintiff, John G. Dieterle, authorized him, orally or otherwise, to make representations as to the condition of the property. He did testify that at the time he went to see Mr. Dieterle to obtain the listing, that the latter told him that the house was in good condition. This would not constitute authority to make a binding representation as to the condition of the house. It is fairly inferable that this conversation was in furtherance of the broker's determination as to whether or not he might undertake to sell the premises at the price named.

562

The trial court properly charged the jury that statements or representations of the agent should only be considered if within the scope of the authority of the agent. Thereafter in the charge of the court appears the following: "You are instructed, unless otherwise agreed the authority of an agent to sell includes authority to make such promises operating as warranties and only such as are usual in such a transaction."

Abstractly this may be a correct principle of law as it respects warranties of title, but we doubt if it could be given application to a representation of condition without an express authority so to do. Furthermore, there is no evidence introduced in the record through which the jury could determine what was usual in such transactions. It is our experience, and we think a matter of common knowledge, that where a property is listed with a broker, the latter has no authority to make representations as to conditions unless specifically authorized so to do. Generally, it is the office of the broker to find a prospective purchaser, show him the premises, give him the price and then, if acceptable, bring the owner and purchaser together for the consummation of the deal.

The action of the cross-petitioners we think clearly indicates that they were relying on their inspection of the premises as the determining factor as to whether or not they were interested in its purchase.

The Bournes both testified that they made a complete examination of the house, going into every room upstairs and down, then on the outside and to the garage. After leaving they told Mr. Anderson that they wanted to inspect it again and did, on the following Saturday morning. During their first inspection they ascertained that the house was not in what they would term first class condition, and this is evidenced by the conditions in their proposal to purchase. Mr. Anderson stated that the tenant, Mrs. Campbell, mentioned other defects, among which was moisture on the walls during rain. The cracks on the outside were plainly discernible, as were the water spots and cracks in the ceiling on the inside. It is true that the cross-petitioners say they did not see these things, and their excuse was that the house was occupied, with curtains at the windows and pictures on the walls. The cross-petitioners' own witnesses say that these particular defects were plainly discernible.

The trial court gave to the jury, before argument, the following instruction:

"The court instructs you as a matter of law that if you find from the evidence that the defendants had full opportunity of examining the property they purchased from the plaintiff, and could easily and readily ascertain its quality and value by inspection, and they failed to do so, the injury they may have sustained is the result of their own folly, and you must find in favor of the plaintiff on defendants' cross-petition."

This was a correct statement of the law.

Mr. Bourne testified that on the first visit he knew that the front door was hard to open, but he did not consider this of much moment since all doors are liable to swell.

The sales proposal contained the provision that the money was to be paid and the deeds delivered within ninety days.

On February 16, 1940, the cross-petitioners had secured a loan and on this day $6700.00 was paid in cash and the note for $300.00 executed and delivered, and at the same time they received their warranty deed executed by Walter E. Dieterle and his wife. The note contained in substance the same provision as was inserted as a condition in the purchase proposal.

The query arises if the cross-petitioners ascertained that the property was not in first class condition and received information from the tenant of other matters, why they did not provide in their sales proposal for further repairs. The plaintiff, John G. Dieterle, testified that he knew the property was not in first class condition, but that he had reduced the sale price from $8500.00 to $7000.00.

One of the complaints is that the driveway to the garage showed deterioration and was broken in places. Their excuse for not seeing this on their first visit was that it was winter and snow on the ground. The observation might be made that the cross-petitioners in their testimony as to representation made by the broker, related to the house. In other words, they say that he represented that the house was in first class condition. Of course, the cement driveway to the garage was not part of the house. The cross-petitioners further testified that on the 16th day of Febuary, 1940, when the deal was closed, that being the first time they had ever seen or talked with John G. Dieterle, they then inquired of him as to whether or not the house was in first class condition and he said it was. This statement Mr. Dieterle denies. Mr. Anderson says that the inquiry was made and that Mr. Dieterle replied that it was in good condition.

We fail to see how this can be connected up, since it is not a representation relied upon by the cross-petitioners when they say that the plaintiff made the false representations on January 20.

We are constrained to the view that there is a failure of proof of any misrepresentation made by plaintiff on or about January 20, 1940, and that the claimed statements made by the broker, Mr. Anderson, were unauthorized and not within the scope of his employment. Furthermore, that the record as a whole fails to establish that the cross-petitioners relied upon any claimed false representations, but on the contrary made a complete inspection and agreed to purchase the property on the faith of their observations. This means that final judgment on the cross-petition must be entered in favor of the plaintiff.

There are other errors complained of and in view of the statutory requirement that a reviewing court shall pass upon all errors, we briefly do so.

Complaint is made that no evidence was introduced on the proper measure of damages. Plaintiff did introduce testimony as to certain expenditures and the probable cost of other expenditures for bringing the property up to what they termed first class condition. This is not the proper measure of damages. In **Ohio Jurisprudence, Vol. 19, p. 542,** appears the following:

"In Ohio, however, the rule is well settled that the measure of damages for fraud inducing the purchase or exchange of property is the difference between the property as it was represented to be and its actual value at the time of the purchase or exchange."

The decisions referred to in the notes clearly support the above rule of law. No evidence whatever was introduced on the above basis.

Another question is that of punitive damages. The trial court charged the jury that if they found fraud on the part of the plaintiff in inducing the contract, punitive damages could be awarded in their discretion. The trial court in his opinion overruling motion for new trial, recognizes the seriousness of this question, and very ably analyzes the Ohio authorities, finally saying that **Ohio Jurisprudence, Vol. 19, page 545, Section 274,** does not correctly state the law. This section, among other things, contains the following:

"However, bare fraud never entitles the party injured to punitive damages. Such damages may be recovered only where there is gross or malicious fraud or something showing a very corrupt condition of affairs."

We are unable to arrive at the conclusion that the court properly charged punitive damages under the facts in the instant case, even if we pass every vital question under which we previously determined the case. That the jury allowed punitive damages is obvious. Therefore, we think the charge was prejudicial.

Plaintiff-appellant preserved his record by asking judgment notwithstanding the verdict. In our judgment this request should have been sustained.

Judgment in favor of the cross-petitioners will be reversed and final judgment entered in favor of plaintiff on the cross-petition. As heretofore stated, the judgment in favor of the defendants and against the plaintiff on his petition will be sustained.

HORNBECK and GEIGER, JJ., concur.